Jerold D. Friedman (SBN: 290434)
    jerry@lawofficejdf.com
LAW OFFICE OF JEROLD D. FRIEDMAN
19744 Beach Blvd. #390
Huntington Beach, CA 92648
Tel: (213) 536-1244
Fax: (281) 667-3506

Attorney for Plaintiffs
GWEN DANIELSON, EMMA BORHANIAN,
JACK LASOTA, and ALEXANDER JEFFREY LEATHAM

**U.S. DISTRICT COURT**
**NORTHERN DISTRICT of CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GWEN DANIELSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SONOMA, CALIFORNIA, et al., <br><br> Defendants. | Case No.: 3:21-cv-8854-JCS <br><br> **PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR STAY OF CIVIL ACTION PENDING CRIMINAL ACTION** <br><br> *Hon. Joseph C. Spero* <br><br> Date:   April 22, 2022 <br> Time:   9:30 a.m. <br> Courtroom: F |

## I.   INTRODUCTION

On March, 12, 2022, Plaintiffs filed their *Opposed Notice of Motion and Motion for Stay of Civil Action Pending Criminal Action* ("Motion") (Doc. No. 27) premised on the *Heck* Rule that Plaintiffs cannot pursue a civil cause of action that is inconsistent with or collaterally attacks an underlying criminal proceeding, citing *Heck v. Humphrey*, 512 U.S. 477 (1994), and the *Younger* Abstention Doctrine that mandates federal courts not to interfere with state criminal proceedings, citing *Dubinka v. Judges of the Superior Court of the State of California*, 23 F.3d 218, 223 (9th Cir. 1994). Motion at *4–5. In their *Younger* argument, Plaintiffs further argue that Cal. Gov. Code § 945.3

additionally requires that a civil action against peace officers or their public entity employer, stemming from an arrest, cannot be brought while the criminal charges are pending. Motion at *6.

Government Defendants do not oppose the Motion. Doc. No. 29.

Nongovernment Defendants stated in their Opposition that they simply ask for the Court to deny Plaintiffs' Motion so that it may rule upon their pending motion to dismiss. Doc. No. 33 at *2. If the Court denies their motion to dismiss, they do not object to Plaintiffs' Motion. *Id*.

Additionally, the Court instructed Plaintiffs "to address whether they believe their civil claim against the non-government defendants would survive if Plaintiffs were convicted on their criminal charges." Doc. No. 34.

## II.  RELEVANT FACTS

Plaintiffs protested alleged child molestation and a cover-up at Defendant Westminster Woods, an unknown business entity, during one of its fundraisers. Complaint, ¶ 20. Westminster Woods' employees—Defendants Christopher Rhodes and Olivia Longstaff—wanted to interrupt and stop Plaintiffs' protest, so they called police to falsely report Plaintiffs had a gun. *Id*., ¶ 21. No gun was found. *Id*., ¶ 22. Plaintiffs were arrested by Government Defendants on several charges unrelated to any gun, the substance of which include felony conspiracy and misdemeanor trespassing, false imprisonment, child endangerment, while wearing a mask, and resisting arrest (Cal. P.C. §§ 182(a)(1), 602(k), 236, 273a(b), 185, 148(a)(1)). Motion at *3.

Plaintiffs in fact never had a gun. It's presently more than two years after their arrest yet no charges related to any gun have been amended into the criminal complaint indicating that any post-arrest investigation produced no gun.

Nongovernment Defendants agree that "the criminal prosecution and civil action arise out of the same facts." Opposition at *2.

## III. ARGUMENT

### A. Defendants Remain Liable If Plaintiffs are Convicted

The seminal case on barring a civil action that is inconsistent with a criminal conviction is *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* held that "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed … expunged … declared invalid … or called into question by a federal court's issuance of a writ of habeas corpus." *Id.*, at 486–87. The application of *Heck* "turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement." *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003). *Heck* was of course affirmed by the Cal. Supreme Court. See i.e., *Yount v. City of Sacramento*, 43 Cal.4th 885, 897 (2008).

The *Heck* Rule specifically applies to 42 U.S.C. § 1983 suits that are necessarily against state actors, so *Heck* is inapplicable against the Nongovernment Defendants. *Heck*, 512 U.S. at 486. Plaintiffs presently pursue only state causes of action, Ralph Act and Bane Act, against Nongovernment Defendants. Complaint, ¶¶ 37–40. Nor would *Heck* apply if it was not limited to state actors; Plaintiffs' hypothetical conviction on any of the non-gun charges would not invalidate or collaterally attack a finding that Nongovernment Defendants were liable for false allegations of Plaintiffs bringing a gun to the protest.

Plaintiffs have not found any authority analogous to *Heck* for a private plaintiff who sues a private defendant for damages. Cf. *Coscia v. McKenna Cuneo*, 25 Cal.4th 1194, 1205 (2001) (a limited exception that bars malpractice suits against a former criminal defense attorney unless the plaintiff's conviction is overturned, expunged, etc.).

### B. *Heck* and Its Progeny Control between Filed Charges and Conviction and Require that the Stay be Granted

Nongovernment Defendants rely on *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899 (9th Cir. 1989) in their Opposition, which was decided five years before *Heck* and its progeny. Plaintiffs do not agree that *Molinaro* controls.

Clarifying *Heck*, the U.S. Supreme Court held in *Wallace v. Kato*, 549 U.S. 384 (2007) that "[i]f a plaintiff files a false-arrest claim before he has been convicted (**or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial**), it is within the power of the district court, **and in accord with common practice**, to stay the civil action until the criminal case or the likelihood of a criminal case is ended" (emphasis added). *Wallace*, 549 U.S. at 393–94. Government Defendants do not oppose Plaintiffs' Motion presumably for this reason.

*Heck* and its progeny control, especially *Wallace*—they are more recent rulings by a higher court pertaining to facts more relevant to the instant issues than *Molinaro* and therefore are the appropriate standard for this Court. *Molinaro* pertained to a plaintiff who was under criminal investigation but not charged with any crime. *Molinaro*, 889 F.2d, 901. See also, *Capanis v. Bianucci*, No. 15-cv-01457-SI, at *2 (N.D. Cal. May 18, 2017) ("*Wallace v. Kato* explained that a stay is appropriate while a criminal case is pending"); *Burgos v. Superior Court of Santa Clara Cnty.*, No. 16-cv-03908-DMR (PR), at *2 (N.D. Cal. June 5, 2017) (*Wallace* stay lifted after conviction); *Carrillo v. Cnty. of Santa Cruz*, No. 20-cv-06973-BLF, at *8 (N.D. Cal. Mar. 2, 2021) (declining a *Wallace* stay because plaintiffs not subject to criminal action nor had they alleged false arrest); *Tran v. Kuehl*, No. 03:16-CV-00707-AC, at *8 (D. Or. Aug. 13, 2018) (declining a *Wallace* stay because plaintiff had already been convicted). Unlike Molinaro, Plaintiffs were arrested and their prosecution is occurring now. Compl. ¶ 5.

### C. A *Molinaro* Analysis Also Favors that the Stay be Granted

Replying to Nongovernment Defendants' use of the *Molinaro* standard:

> The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made "in light of the particular circumstances and competing interests involved in the case." *Molinaro*, 889 F.2d at 902. This means the decisionmaker should consider "the extent to which the defendant's fifth amendment rights are implicated." *Id*. In addition, the decisionmaker should generally consider the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. *Id*. at 903.

*Keating v. Office of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir. 1995).

1. Plaintiffs' Fifth Amendment Rights

Defendants' Opposition is limited in scope to having the Court deny the stay only to hear their pending motion to dismiss, Opposition, p.2, ln.9–11, and, within that scope, Plaintiffs agree that their Fifth Amendment rights are not implicated. *Id*., p.6, ln.3–8. However, Defendants' argument is a Trojan Horse, for if the Court agrees to hear the motion to dismiss, it will cause a series of civil procedure that will predictably result in Plaintiffs needing to invoke the Fifth.

Clearly, with criminal prosecution underway, Plaintiffs will broadly invoke the Fifth Amendment in all civil matters as is their constitutional right. Even though Plaintiffs cannot leverage a *Molinaro* stay solely for this reason, see *Keating, infra*, Plaintiffs' wise choice to broadly invoke their right not to testify against themselves can be exploited by Nongovernment Defendants. "A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his

Fifth Amendment privilege. Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding." *Keating*, 45 F.3d, 326 (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). Here, a *Molinaro* stay will prejudice Plaintiffs by forcing them to choose to protect themselves in the criminal or civil venue. With a felony conviction and imprisonment as the greater threat, a *Molinaro* stay is a gift to Nongovernment Defendants' civil case.

If the Court chooses to hear Nongovernment Defendants' motion to dismiss, Plaintiffs will seek leave to amend their complaint. See Compl., ¶ 5. Given that the Complaint is lightly developed due to the pending criminal proceeding, *id*., and no amendment has been requested thus far, Plaintiffs anticipate leave being granted. "'The court should freely give leave [to amend] when justice so requires,' bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities."'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). Filing an amended complaint will predictably prompt another motion to dismiss by Nongovernment Defendants or another motion to stay by Plaintiffs, all pertaining to exercising their Fifth Amendment rights and not become a witness against themselves.

2. <u>Plaintiffs' Interest in Speedy Civil Litigation</u>

As Plaintiffs are the Movants for the stay, they have no present interest in speeding litigation.

3. <u>Burden Imposed on Defendants</u>

Government Defendants are unopposed to the stay. Doc. No. 29.

Nongovernment Defendants argue that they are burdened because the criminal proceeding "potentially tak[es] months or even years to conclude." Opposition, at *6. They cite *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979), "A stay should not be granted unless it

appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." As with *Molinaro*, *Leyva* was decided long before *Heck*, in this case fifteen years. *Leyva* did not and could not contemplate the bounds or contours of *Heck* or *Wallace* in its holding.

Nonetheless, *Leyva* is not relevant to the Motion. *Leyva* contemplated a stay in the proceedings that delayed payment of wages against "the strong congressional policy favoring prompt payment of wages" as an urgent factor. *Leyva*, 593 F.2d, 864. There is no urgent factor in the instant matter. Nongovernment Defendants suffer no prejudice if a stay is granted. Plaintiffs reason that Nongovernment Defendants' argument to the contrary is disingenuous. Nongovernment Defendants assert that "the Defendants who bear the burden of elongated and expensive litigation costs over time," Opposition at *6, but don't explain what those litigation costs could be especially in light of the case being stayed. So long as their attorneys don't bill them for waiting, a stayed case should not impose any costs or at least any "expensive" costs. Rather, Plaintiffs reason that Nongovernment Defendants' choice to oppose the stay incurs them to pay unnecessary attorney fees because, if they did not oppose Plaintiffs' Motion, Nongovernment Defendants could wait to have their motion to dismiss preserved and heard later, without further filings or attorney fees, after any granted stay was lifted.

4. <u>Burden on the Court</u>

Plaintiffs are aware of every court's policy and preference to clear their docket and respectfully ask that the Court not oppose their Motion on this policy. Plaintiffs seek a speedy resolution of the civil case once they are no longer in jeopardy of conviction and incarceration.

Plaintiffs are unclear why the Court asked them to brief the Nongovernment Defendants' liability if they are convicted. If the Court is considering staying the case only against Government Defendants and allowing the case to proceed against Nongovernment Defendants, Plaintiffs reason

that this will double the workload for the Court and Plaintiffs alike by effectively splitting their lawsuit into two cases. Not only will two cases burden the Court but it will severely prejudice Plaintiffs whose sole interest at issue is not to be forced to prejudice or sacrifice their civil and criminal cases.

5. <u>Burden on Third-Parties</u>

Plaintiffs agree with Nongovernment Defendants that there is no material burden on interested persons not parties to suit or the public. (Opposition, ¶ 7.) However, since burden on other persons is a basis to deny the stay, then lack of any burden to other persons should favor Plaintiffs' Motion despite Defendants argument that no party should be favored.

### IV.   CONCLUSION

Granting Plaintiffs' Motion will allow Nongovernment Defendants' motion to dismiss to be heard at a later date when Plaintiffs' criminal proceeding and their Fifth Amendment rights are no longer at issue. Following this process is "in accord with common practice" (*Wallace*) and does not burden Defendants. On the contrary, denying the stay will prejudice Plaintiffs and runs the risk of doubling the burden on this Court. For these reasons and the reasons stated in Plaintiffs' Motion, Plaintiffs respectfully request that the entire case be stayed.

Dated: April 4, 2022            By:
                                  */s/ Jerold D. Friedman*
                                  Jerold D. Friedman
                                  Attorney for Plaintiffs